IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHEAL TURNBOW,<br><br>    Plaintiff,<br><br>    v.<br><br>COOK DUPAGE TRANSPORTATION/NATION EXPRESS,<br><br>    Defendant. | No. 21-cv-04588<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Micheal Turnbow, proceeding pro se, filed this employment discrimination action against his former employer, Defendant Cook DuPage Transportation Company ("CDT"). (Dkt. 1.) Plaintiff's complaint asserts three claims: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; (2) retaliation under the ADA; and (3) common-law retaliatory discharge under Illinois law. (*Id.*) Defendant has moved for summary judgment on all claims after the close of discovery. (Dkt. 163.)

As explained below, Plaintiff has not met his burden to highlight evidence demonstrating that there exists a genuine dispute of material fact that would justify a jury trial. Having reviewed the parties' submissions, the Court finds that Defendant is entitled to judgment as a matter of law on each of Plaintiff's claims. Accordingly, the motion for summary judgment is granted.

I. **BACKGROUND**

Defendant contracts with Pace, a bus company, to provide transportation for elderly riders and individuals with disabilities in Illinois. (Dkt. 165 ¶ 2.) Defendant's drivers take passengers to medical and other essential appointments and assist them in boarding and exiting. (*Id.* ¶ 4.) Plaintiff was hired as a driver in 2015. (*Id.* ¶ 3.)

Consistent with Federal Transit Administration regulations, Defendant maintains a drug and alcohol testing program for drivers that includes random testing for cocaine. (Dkt. 165 ¶¶ 8–9); 49 CFR § 655.21. Defendant's Employee Handbook ("Handbook") requires compliance with its Drug and Alcohol Policy and states that an employee with a verified positive drug test is subject to immediate discharge. (Dkt. 165 ¶¶ 18, 20, 22.) Plaintiff acknowledged receipt of the Handbook, received the Drug and Alcohol Policy, and understood he would be subject to drug testing, including random testing. (*Id.* ¶¶ 7, 22–23.) Indeed, during the course of his employment, Plaintiff was subject to random drug testing. (*Id.* ¶ 24.)

DOT rules permit outsourcing of program functions. (*Id.* ¶ 11.) Defendant used HireRight as its third-party administrator to coordinate service agents—such as urine collectors, testing laboratories, and Medical Review Officers (MRO)[1] that met DOT qualifications—and to perform random selections at federally required rates. (*Id.* ¶¶ 12–13.) Defendant had no role in deciding who was selected, and it did not receive test results until an MRO verified them. (*Id.* ¶¶ 11–13, 19.)

---

[1] A Medical Review Officer (MRO) is a licensed physician, required under federal drug-testing regulations, who independently reviews laboratory results to verify whether a positive test has a legitimate medical explanation before reporting a final determination. 49 C.F.R. § 40.121

HireRight selected Plaintiff for a random drug test on April 1, 2019 (Dkt. 165 ¶¶ 13, 41.) On April 9, 2019, Plaintiff went to West Suburban Medical Center with chest pain that he reported worsened when pushing wheelchairs at work. (*Id.* ¶¶ 25–26.) But Plaintiff's breathing was noted as normal, an EKG was normal, and a chest X ray showed a normal heart size. (*Id.* ¶¶ 28–29.) Plaintiff was discharged the same day with a diagnosis of chest pain, prescribed aspirin, and told to see a cardiologist for a stress test. (*Id.*) WSMC issued a note allowing a return to work with light duty pushing and pulling, if available, until cardiology evaluation. (*Id.* ¶¶ 29–30.) Plaintiff never followed up with a cardiologist. (*Id.* ¶ 37.) But Plaintiff gave the note to his manager and requested light duty. (*Id.* ¶ 31.) Defendant initially accommodated Plaintiff by assigning only ambulatory passengers who did not require physical assistance. (*Id.* ¶ 34.) After discovering Plaintiff had never scheduled the cardiology appointment, Defendant took Plaintiff off light duty. (*Id.* ¶¶ 31, 34–35, 39.)

On April 29, 2019, a supervisor notified Plaintiff that HireRight had randomly selected him for a drug test on April 1, and Plaintiff provided a urine sample that day. (Dkt. 165 ¶¶ 42, 45.) Fewer than two weeks later, Defendant instructed Plaintiff to contact the independent MRO because the results had been returned. (*Id.* ¶ 45.) Over the phone, the MRO asked about Plaintiff's health conditions and medications and concluded there was no legitimate medical explanation for the presence of cocaine metabolites. (*Id.* ¶ 49.) The MRO reported a verified positive result to Defendant the same day; Plaintiff was then terminated based on his use of cocaine. (*Id.* ¶¶ 48–50.)

3

## II. STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment requires a "non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III. DISCUSSION

Defendant has met its initial burden under Rule 56 by pointing to an absence of evidence supporting essential elements of Plaintiff's claims. The burden thus shifts to Plaintiff to produce evidence sufficient for a jury to find in his favor. As explained below, Plaintiff has not carried that burden for any of his three claims.

### A.   ADA Disability Discrimination Claim

Plaintiff first claims that Defendant discriminated against him on the basis of a disability, in violation of the ADA, by terminating his employment. The ADA bars covered employers from discriminating "on the basis of disability" in hiring, firing, and other terms of employment. 42 U.S.C. § 12112(a). To avoid summary judgment, a plaintiff must offer evidence that (1) they have an ADA disability, (2) they are a "qualified individual", and (3) disability was the but-for cause of the adverse action. *Id.* § 12102(1); *id.* § 12111(8); *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). Absent direct evidence of causality, a plaintiff may shift the burden to the defendant after showing an adverse action and more favorable treatment of similarly situated non-disabled employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). But if the employer then offers a legitimate, non-discriminatory reason, the plaintiff must show pretext. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 256 (1981).

Applying those standards here, the Court finds that Plaintiff's ADA discrimination claim cannot survive. Even assuming that Plaintiff's alleged medical condition qualifies as a disability under the ADA,[2] Plaintiff has not come forward with evidence from which a jury could infer that his disability was the reason for his termination

---

[2] It is doubtful that Plaintiff had a qualifying disability under the ADA, considering the normal EKG tests and Plaintiff's later testimony that he considered himself "a perfectly healthy young man" and that he had "no pre-existing conditions." (Dkt. 165 ¶¶ 62, 64–66.)

5

As the undisputed record shows, Defendant terminated Plaintiff after a MRO, an independent and federally-qualified physician who verifies drug test results, reported that Plaintiff had tested positive for cocaine. (Dkt. 165 ¶ 49.) Defendant's Drug and Alcohol Policy provides that any employee with a verified positive drug test is subject to discharge, and federal transit rules require immediate removal from service after a verified positive test. (*Id.* ¶ 20); 49 C.F.R. § 655.61. Defendant received the MRO's verification before terminating Plaintiff, and it produced the materials it is permitted to receive and keep, including the MRO's letter and the Federal Custody and Control Form documenting the chain of custody and positive result. (Dkt. 165 ¶¶ 17–20, 45–50, 55); 49 C.F.R. § 40.163.

Plaintiff offers nothing to rebut any of this, other than speculative assertions that Defendant concealed and misrepresented the drug test results. The closest Plaintiff gets to any evidence to support his claim is that that someone at LabCorp recently told him there was no record of his test based on the "information provided." (Dkt. 193 at 12.) Asides from hearsay concerns, this evidence is speculative. Even if Plaintiff is correct that LabCorp has no record, federal rules require laboratories to retain many drug testing records for only two years, so a lack of records five years later when Plaintiff requested it would not suggest fabrication. *See* 49 C.F.R. § 40.109. Moreover, Defendant produced the contemporaneous custody form showing LabCorp received and tested Plaintiff's specimen and that the MRO verified the positive result on the day Plaintiff was fired. (Dkt. 165 ¶¶ 45–49.)

6

Plaintiff also cannot rely on the burden shifting framework of *McDonnell Douglas*. Plaintiff identifies no coworker who tested positive and was retained, which undermines any claim of inconsistent enforcement. (Dkt. 165 ¶¶ 13, 15, 31, 41, 51.) As the Seventh Circuit has explained, a plaintiff's failure to identify any similarly situated, non-disabled comparator who received better treatment for similar misconduct is fatal to a prima facie case of ADA discrimination. *Rowlands v. United Parcel Serv., Inc.*, 901 F.3d 792, 801 (7th Cir. 2018).

Finally, Plaintiff offers no evidence that the drug test was pretextual. Plaintiff suggests disability animus because he had requested light duty around the same time. (Dkt. 178 at 1.) But the timeline does not support that inference. A third-party administrator—HireRight, not Defendant—randomly selected Plaintiff for testing *before* his light-duty request. (Dkt. 165 ¶ 41); 49 C.F.R. § 655.45.

In short, the record shows a straightforward reason for termination: a verified positive drug test. Plaintiff offers speculation in response, but courts cannot draw inferences based on speculation or conjecture. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Because no reasonable jury could find that disability was the but-for cause of Plaintiff's firing on this record, summary judgment for Defendant is warranted on the ADA discrimination claim.

### B. ADA and Illinois Retaliation Claim

Consistent with the analysis above, the ADA and Illinois retaliation claims fail for the same reason the discrimination claim does: causation. Retaliation under the ADA requires admissible evidence that the protected activity was the but-for cause

7

of the adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362–63 (2013); *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632–33 (7th Cir. 2020). Illinois retaliation claims apply the same framework. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016); *Zaderaka v. Ill. Hum. Rts. Comm'n*, 131 Ill. 2d 172, 178–80 (1989).

Assuming his accommodation requests were protected and the termination was adverse, Plaintiff offers no evidence that his requests caused his firing. As the undisputed record shows, a third party randomly selected Plaintiff for testing, an independent MRO reported a verified positive cocaine result, and Defendant immediately terminated Plaintiff under a uniform policy that Plaintiff had signed. (Dkt. 165 ¶¶ 7, 41, 49); 49 C.F.R. § 655.61. This timing also defeats any inference of retaliation, as Plaintiff was randomly selected by a third party—not Defendant—for testing on April 1, 2019. That random selection came before Plaintiff's April 10 light duty request. (*Id.* ¶¶ 13, 15, 31, 41.) Plaintiff's speculation that the result was misrepresented is also flatly contradicted by the Federal Custody Control Form and the MRO's verified positive result, both produced to Plaintiff. (*Id.* at 10.) This record amply demonstrates that no reasonable jury could find that Defendant would not have fired Plaintiff but for protected activity. Summary judgment on the ADA and Illinois common law retaliation claims is thus warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 163) is granted.

SO ORDERED in No. 21-cv-04588.

Date: September 30, 2025

                                              JOHN F. KNESS  
                                              United States District Judge